**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JEANETTE ESTRELLA, HAROLD PEERY, STEPHEN SCHNEIDER, and DENEEN POND, individually, and on behalf of all others similarly situated,** | ) | |
| **Plaintiffs,** | ) | **Case No. 1:23-cv-15302** |
| **v.** | ) | **Hon. Charles P. Kocoras** |
| **OMRON HEALTHCARE, INC.,** | ) | |
| **Defendant.** | ) | |

**OMRON HEALTHCARE, INC.'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS CLASS ACTION COMPLAINT AND STRIKE ALLEGATIONS RELATING TO CLASS CERTIFICATION**

Patrick G. Cooke (ARDC No. 6229059)
C. Matt Alva (ARDC No. 6305365)
Anthony J. Monaco (ARDC No. 6279545)
SWANSON, MARTIN & BELL, LLP
330 North Wabash Ave., Suite 3300
Chicago, Illinois 60611
Tel. (312) 321-9100
*Attorneys for Defendant Omron Healthcare, Inc.*

**TABLE OF CONTENTS**


Introduction ........ 1

Argument ........ 2

A. Because the Implied Warranty, Express Warranty and Unjust Enrichment Claims Cannot be Adjudicated in a Multi-State or Nationwide Class, These Claims Should be Dismissed/Stricken with Prejudice ........ 2

B. Plaintiffs Deficient California Statutory Claims Direct Dismissal ........ 3

1. Plaintiffs' UCL Claim ........ 3

2. Plaintiffs' CLRA Claim ........ 6

C. Plaintiffs Fail to State Fraud Claims Under Florida and Washington Law ........ 8

1. The Washington Claims ........ 8

2. The Florida Fraud Claims ........ 9

D. Plaintiffs' Express Warranty Claim Fails as a Matter of Law ........ 11

E. Plaintiffs Breach of Implied Warranty Claims Fail as a Matter of Law ........ 12

1. Both Pre-Sale Representations and the User Manual Defeat the Claim ........ 12

2. The User Manual Disclaimer was Conspicuous and, Thus, Enforceable ........ 12

3. Plaintiffs Failed to Plead Product Defect ........ 13

4. Pleading "Exception" to the Privity Requirement Will Not Save Their Implied Warranty Claim ........ 14

F. Plaintiffs Fail to Plead a Song-Beverly Implied Warranty Claim ........ 15

Conclusion ........ 16

# TABLE OF AUTHORITIES

**Cases**

*Acosta-Aguayo v. Walgreen Co.*,
No. 22-CV-00177, 2023 WL 2333300 (N.D. Ill. Mar. 2, 2023) ........ 7

*Angelo v. Parker*,
275 So. 3d 752 (D. Fla. 2019) ........ 9

*In re Aqua Dots Products Liability Litigation*,
270 F.R.D. 377 (N.D. Ill. 2010) ........ 3

*Beyer v. Symantec Corp.*,
333 F. Supp. 3d 966 (N.D. Cal. 2018) ........ 7

*Brothers v. Hewlett-Packard Co.*,
No. C-06-02254, 2007 WL 485979 (N.D. Cal. Feb. 12, 2007) ........ 13

*Brown v. Transworld Sys., Inc.*,
646 F. Supp. 3d 1328 (W.D. Wash. 2022) ........ 8

*Caldwell v. Nordic Naturals, Inc.*,
No. 23-cv-02818, 2024 WL 24325 (N.D. Cal. Jan. 2, 2024) ........ 11

*Cheslow v. Ghiradelli Chocolate Co.*,
No. 19-cv-07467-PJH, 2020 WL 1701840 (N.D. Cal. Apr. 8, 2020) ........ 4

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) ........ 15

*Cutsforth v. Renschler*,
235 F. Supp. 2d 1216 (M.D. Fla. 2002) ........ 10

*Durell v. Sharp Healthcare*,
183 Cal. App. 4th 1350 (2010) ........ 6

*Felice v. Invicta Watch Company of America, Inc.*,
No. 16-CV-62772, 2017 WL 3336715 (S.D. Fla. Aug. 4, 2017) ........ 13

*Freeman v. Time, Inc.,*
68 F.3d 285 (9th Cir. 1995) ........ 4

*Fullerton v. Correlle Brands, LLC*,
No. 18-cv-4152, 2019 WL 4750039 (N.D. Ill. Sept. 30, 2019) ........ 3

*Fundin v. Chicago Pneumatic Tool Co.*,
152 Cal. App. 3d 951 (1984) ....................13

*In re Gen. Motors Corp. Dex-Cool Prod. Liab. Litig.*,
241 F.R.D. 305 (S.D. Ill. 2007) ....................2

*Hairston v. S. Beach Beverage Co.*,
No. CV 12-1429-JFW DTBX, 2012 WL 1893818 (C.D. Cal. May 18, 2012)....................3

*Harris v. Nordyne, LLC*,
No. 14-CIV-21884-BLOOM/Valle, 2014 WL 12516076 (S.D. Fla. Nov. 14, 2014)....................10

*Hauger v. Dollar Gen. Corp.*,
No. 21-CV-1270, 2022 WL 2532487 (C.D. Ill. July 7, 2022) ....................7

*Hecker v. Deere & Co.*,
556 F.3d 575 (7th Cir. 2009) ....................2

*Hirsch v. BHS Home Appliances Corp.*,
No. SACV 21-01355-CJC, 2022 WL 4596692 (C.D. Cal. July 21, 2022)....................13

*Hoffman v. Transworld Sys., Inc.*,
806 F.App'x 549 (9th Cir. 2020) ....................9

*Hunt v. Medtronic USA, Inc.*,
627 F. Supp. 3d 1188 (W.D. Wash. 2022)....................9

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ....................6

*Kosta v. Del Monte Foods, Inc.*,
308 F.R.D. 217 (N.D. Cal. 2015)....................4

*Kramer v. Piper Aircraft Corp.*,
520 So. 2d 37 (Fla. 1988)....................15

*Lederman v. Hershey Co.*,
No. 21-CV-4528, 2022 WL 3573034 (N.D. Ill. Aug. 19, 2022) ....................7

*Levitt v. Yelp! Inc.*,
765 F.3d 1123 (9th Cir. 2014) ....................13

*Lombardo v. Johnson & Johnson Consumer Cos., Inc.*,
124 F. Supp. 3d 1283 (S.D. Fla. 2015) ....................9

*Lowe v. Edgewell Personal Care Company*,
No. 23-cv-00834, 2024 WL 150758 (N.D. Cal. Jan. 12, 2024)..........................................14

*Maloney v. Microsoft Corp.*,
No. 09–2047, 2011 WL 5864064 (D.N.J. Nov. 21, 2011).................................................. 2

*Maneely v. Gen. Motors Corp.*,
108 F.3d 1176 (9th Cir. 1997) ..........................................................................................11

*Marchante v. Sony Corp. of America, Inc.*,
801 F. Supp. 2d 1013 (S.D. Cal. 2011)..............................................................................16

*Mazza v. Am. Honda Motor Co., Inc.*,
666 F.3d 581 (7th Cir. 2012) ............................................................................................ 3

*Mesa v. BMW of N. Am.,*
904 So. 2d 450 (Fla. Dist. Ct. App. 2005) .........................................................................15

*Mexia v. Rinker Boat Co., Inc.*,
95 Cal. Rptr. 3d 285 (Cal. App. 4th Dist. 2009).................................................................15

*Moran v. Edgewell Personal Care, LLC*,
No. 21-cv-07696 RS, 2022 WL 3046906 (N.D. Cal. Aug. 2, 2022) ...................................14

*Richter v. CC-Palo Alto, Inc.*,
176 F. Supp. 3d 877 (N.D. Cal. 2016) ............................................................................... 6

*Samuels v. King Motor Co. of Ft. Lauderdale*,
782 So. 2d 489 (Fla. 4th DCA 2001).................................................................................10

*Smith v. LG Elecs. U.S.A., Inc.,*
No. C 13-4361 PJH, 2014 WL 989742 (N.D. Cal. Mar. 11, 2014) .....................................11

*State v. Beach Blvd. Auto., Inc.*,
139 So. 3d 380 (Fla. 1st DCA 2014) ................................................................................. 9

*Tierney v. Vahle,*
304 F.3d 734 (7th Cir. 2002) ............................................................................................ 2

*Torres v. Botanics, LLC*,
No. 23-cv-01460-VC, 2023 WL 8852754 (N.D. Cal. Dec. 21, 2023).................................. 6

*USA Nutraceuticals Group, Inc. v. BPI Sports, LLC*,
No. 15-cv-80352, 2016 WL 4250668 (S.D. Fla. Apr. 12, 2016).........................................10

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ........................................................................................ 6

*Watkins v. MGA Entertainment, Inc.*,
574 F. Supp. 3d 747 (N.D. Cal. 2021) ........................................................................11

*Weis v. General Motors LLC*,
418 F. Supp. 3d 1173 (S.D. Fla. 2019) ........................................................................15

*Williams v. Gerber Prods. Co.,*
552 F.3d 934 (9th Cir. 2008) .......................................................................................... 4

*In re Yasmin and Yaz (Drospirenone) Mktg.*,
275 F.R.D. 270 (S.D. Ill. 2011) ...................................................................................... 3

**Statutes**

Cal. Bus. & Prof. Code § 17204..........................................................................................7

Cal. Civ. Code § 1791.1(c)..................................................................................................15

## Introduction

"Blood pressure is variable even when measured by precise methods…."

--Dr. Christian Ruff, Harvard – Affiliated Cardiologist

The quote comes an article on which Plaintiffs rely in their complaint. Cmplt. at 6, fn 4. The article goes on: "To get a more accurate assessment of blood pressure, regardless of blood pressure monitor used, people should perform multiple recordings and average them." According to Plaintiffs' own evidence, blood pressure readings – even when taken by physicians in clinical settings – are not exact.

In their complaint and response brief, Plaintiffs also heavily rely on a Northwestern University study ("Northwestern Study"). *E.g.*, Resp. Br. at 1-2. Omron represented in its User Manual the Product's accuracy was +/-3mmHg. The Northwestern Study concluded the accuracy was +/-3.7mmHg. Not only is this seven tenths difference clinically not material, but the slight difference can be explained in a myriad of ways. For example, the Northwestern Study contained only 86 participants - 26 male, 60 female. Had there been more male participants than female, the conclusion may have been +/-3mmHg or less. If the pool consisted of more than 86 participants, say 200-250 participants, the results could have yielded conclusions closer to or at +/-3mmHg. Plaintiffs reliance on a .7 differential in a limited study to conclude gross fraud committed by Omron in its advertising is seemingly in conflict with the article evidence they cite in their own pleading.

Finally, Plaintiffs rely on negative Amazon.com reviews: "Over one hundred verified (but irritated) purchasers published reviews of the Product on Amazon.com and Omron's own website, including physicians and engineers." Resp. Br. at 2. Yet, according to Amazon, a "verified purchase" means the reviewer bought or used the item on Amazon and paid a price available to

most Amazon shoppers.[1] That is it. There are no verified physicians or engineers reviewing this Product or any other on Amazon.com. Even if the reviewers were "physicians" or "engineers," as Plaintiffs argue, no one knows to what extent each had any experience with blood pressure monitors. With this purported "evidence," Plaintiffs argue fraud and breach of warranty. Closer scrutiny of the allegations and claims direct their dismissal.

## Argument

### A. Because the Implied Warranty, Express Warranty and Unjust Enrichment Claims Cannot be Adjudicated in a Multi-State or Nationwide Class, These Claims Should be Dismissed/Stricken with Prejudice.

Plaintiffs withdrew their implied warranty claim on behalf of the Washington class. Resp. Br. at 23. The remainder multi-state and nationwide class implied warranty claims, express warranty claims and unjust enrichment claims should be dismissed with prejudice. That is so because there are too many variations in the state laws governing the class claims, individual questions of fact and law predominate over the common questions, and Plaintiffs predominantly request monetary damages and individualized damages. Op. Mem. at 21-27. [2]

For the class members, it will be their home state's law that governs—where they reside, where they purchased and used the Product, and where their alleged injuries occurred. *See Maloney v. Microsoft Corp.*, No. 09–2047, 2011 WL 5864064, at *8-10 (D.N.J. Nov. 21, 2011)(found nine outcome-determinative differences in states' respective implied warranty laws and rejected nationwide class); *In re Gen. Motors Corp. Dex-Cool Prod. Liab. Litig.*, 241 F.R.D. 305, 314–15 (S.D. Ill. 2007) (denying a motion for class certification for express warranty claim because court would have to apply "the significantly-differing laws" from state to state). *See* Op. Mem. at 24-

[1] https://www.amazon.com/gp/help/customer/display.html?nodeId=G75XTB7MBMBTXP6W

[2] "Op. Mem." shall refer to Omron's opening motion to dismiss and strike (Doc. No. 12).

25 and cited authority therein. Similarly, "the law of unjust enrichment varies too much from state to state to be amenable to national or even to multistate class treatment." *In re Aqua Dots,* 270 F.R.D. at 386; *see also Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 591 (7th Cir. 2012); Op. Mem. at 26-27 and cases collected therein.

Plaintiffs make no substantive response to Omron's arguments and merely request the Court defer dismissal or striking of these claims until after discovery has proceeded. Resp. Br. at 30. But no discovery will change the different laws in each state that govern the warranty and unjust enrichment claims. When it is clear that Rule 23's requirements cannot be satisfied, courts routinely grant motions to strike/dismiss class claims or requests for class certification. *Fullerton v. Correlle Brands, LLC*, No. 18-cv-4152, 2019 WL 4750039, at *14-15 (N.D. Ill. Sept. 30, 2019) (class allegations stricken at the pleading stage when "dispute is not factual and discovery is unnecessary to resolve it."); *In re Yasmin and Yaz (Drospirenone) Mktg.*, 275 F.R.D. 270, 274 (S.D. Ill. 2011) (motion grated where "it [wa]s evident that individual questions of law and fact predominate"). Omron has demonstrated the significant differences in the state laws and Plaintiffs' failure to satisfy the requirements of Rule 23. Op. Mem. at 21-27. Plaintiffs offer no response. The nationwide and multi-state claims in Counts I, VI and VIII should be dismissed.

**B. Plaintiffs Deficient California Statutory Claims Direct Dismissal.**

**1. Plaintiffs' UCL Claim.**

When a claim is ultimately premised on allegedly deceptive advertising, a court will ask whether "members of the public are likely to be deceived" by the advertisement, or an objective reasonable consumer standard. *Hairston v. S. Beach Beverage Co.*, No. CV 12-1429-JFW DTBX, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012) (*citing Williams v. Gerber Prods. Co.,* 552 F.3d 934, 938 (9th Cir. 2008); *Freeman v. Time, Inc.,* 68 F.3d 285, 289 (9th Cir.1995)). The "test

requires more than a mere possibility that defendant's products 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner,'" but "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances could be misled." *Cheslow*, 2020 WL 1701840, at *4 (citations omitted).

In a class action involving claims brought under California's Unfair Competition Law (UCL), False Advertising Law, or Consumers Legal Remedies Act (CLRA), proof that statements were material to a plaintiff purchaser class, and that class members relied on those statements in making purchasing decisions, does not always require individualized evidence for each class member; however, plaintiffs must offer some means of proving materiality and reliance by a reasonable consumer on a classwide basis. *Kosta v. Del Monte Foods, Inc*., 308 F.R.D. 217 (N.D. Cal. 2015).

Here, Plaintiffs allege the advertising and packaging of the Product purportedly deceived consumers. Cmplt. *passim*. Yet, the statements made in Omron's advertising are, in fact, true. First, as the Harvard Medical article referenced by Plaintiffs states: "Blood pressure is variable even when measured by precise methods…." Cmplt. at 6, fn 4. Put another way, all blood pressure readings – whether taken in a hospital or at home – are variable and accurate within a range. Here, Omron specifically represented the Product was within a +/-3mmHg. *E.g*., Cmplt. at ¶32.

The Northwestern Study indicates the same range, albeit seven tenths higher based on any number of reasons. Discussion, *supra*. While the "#1 recommended home blood pressure monitor brand by doctors and pharmacists for clinically-accurate home monitoring" is arguably non-actionable puffery, it is also factually true. *See* Frost & Sullivan June 21, 2023 Survey attached as Exhibit 1. As for the larger cuff or the Product's used by pregnant persons, the appropriate qualifications were included in the User Manual, the same User Manual that provides a means by

which to return the Product if a consumer so chooses. Although Plaintiffs repeatedly claim the information was not provided at the point of sale, this is not true. The User Manual is contained on the Amazon website:

## Product details

**Product Dimensions :** 4.7 x 7.5 x 3.3 inches; 7.36 ounces

**Item model number :** BP5450

**Batteries :** 4 AA batteries required. (included)

**Date First Available :** August 22, 2019

**Manufacturer :** cvh

**ASIN :** B07RX8WQ4K

**Country of Origin :** Vietnam

**Best Sellers Rank:** #6,200 in Health & Household (See Top 100 in Health & Household)
#15 in Automatic Arm Blood Pressure Monitors

**Customer Reviews:**
4.5 22,216 ratings

## Product guides and documents

User Manual (PDF)

Instructions for Use (IFU) (PDF)

Moreover, Plaintiffs only vaguely allege they would not have purchased the Product had Omron disclosed some inefficiencies in the Product's accuracy. Cmplt. at ¶133. Blood pressure is variable. Any reasonable consumer understands this and it explains why their own blood pressure readings are not the same with every doctor's visit. With the relatively *de minimis* negative reviews (compared to the positive reviews) and the Northwestern Study that supports Omron's representations, no reasonable consumer would have refused to purchase the Product had they known of the minor range fluctuations.

Finally, the "unfair" prong of Plaintiffs' UCL claim will not save it. The unfair prong is merely a catchall where a court cannot find a defendant's actions were clearly deceiving, misleading or fraudulent. *Torres v. Botanics, LLC*, 2023 WL 8852754, at *1 (N.D. Cal. Dec. 21, 2023). Here, Omron's conduct cannot be deemed unfair. Its User Manual was available on the Amazon website and included in the packaging. Omron commissioned the Northwestern Study that supported its representations in its User Manual. Finally, all consumers have access to all available online reviews, whether they are accurate or not, including those that are negative. For this additional reason, Count III should be dismissed.[3]

**2. Plaintiffs' CLRA Claim.**

Generally, CLRA claims are scrutinized by the higher pleading standard of Federal Rule of Civil Procedure 9(b) because they are grounded in fraud. *Richter v. CC-Palo Alto, Inc.*, 176 F. Supp. 3d 877, 899 (N.D. Cal. 2016). Under Rule 9(b), the plaintiff must plead the "who, what, when, where, and how" of the alleged misconduct. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009). In addition, the "plaintiff must set forth what is false or misleading about a statement, and why." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). A plaintiff must have relied on the defendant's alleged misrepresentation and suffered economic injury as a result. *Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 108 Cal.Rptr.3d 682, 697 (2010). Reliance is sufficient where the "misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's injury-producing conduct," such as where "the plaintiff 'in all reasonable probability' would not have engaged in [that] conduct" in the absence of the fraud. *Beyer v. Symantec Corp.*, 333 F. Supp. 3d 966, 980 (N.D. Cal. 2018).

---

[3] While there is a separate unfair prong under the UCL, Omron addressed Plaintiffs' UCL claims in their entirety. Op. Mem. at 11-13.

First, Plaintiffs do not meet any of the heightened pleading standards for a claim under the CLRA. There is no indication of how, when, where, or why Plaintiffs were deceived by Omron. Plaintiffs only generally assert that Omron "knew" about the blood pressure monitor's alleged defect. Cmplt. at ¶144. *See Lederman v. Hershey Co.*, No. 21-CV-4528, 2022 WL 3573034, at *6 (N.D. Ill. Aug. 19, 2022) (dismissing plaintiff's fraud claim where plaintiff broadly asserted that defendant had fraudulent intent without any factual allegations in support).

Second, Plaintiffs do not adequately plead damages based on actual reliance. Plaintiffs only conceivably lost money when they purchased the blood pressure monitor. *See* Cal. Bus. & Prof. Code § 17204. Omron's allegedly deceptive conduct, according to Plaintiffs, consists of only omitting the range of accuracy for the Product, though Omron did this too. Their damages, if any, are the cost of the Product. Cmplt. at ¶144.

Finally, Plaintiffs' allegations regarding Omron's knowledge and intent are conclusory, subject to dismissal. *See Acosta-Aguayo v. Walgreen Co.*, No. 22-CV-00177, 2023 WL 2333300, at *7 (N.D. Ill. Mar. 2, 2023) (citing *Hauger v. Dollar Gen. Corp.*, No. 21-CV-1270, 2022 WL 2532487, at *6 (C.D. Ill. July 7, 2022)). Plaintiffs only generally assert that Omron "knew" about the blood pressure monitor's alleged defect. Cmplt. at ¶144. Plaintiffs fail to demonstrate beyond these conclusory assertions that Omron omitted the alleged defect or that Omron knew its advertisements of the Product would induce other consumers to continue buying the Product. *See Lederman, supra.* Indeed, Omron's representations were accurate. Discussion, *supra*. Omron's description of its Product and accuracy range were disclosed at the point of sale where the User Manual could be accessed and separately in the Product's packaging. There was no fraud, let alone fraud that has been adequately pleaded by Plaintiffs. Count IV should be dismissed.

### C. Plaintiffs Fail to State Fraud Claims Under Florida and Washington Law.

#### 1. The Washington Claims.

Under the Washington CPA, one must plead allegations that there was an unfair deceptive act that affected the public interest. Plaintiffs have done neither. As for the claimed deceit, the Northwestern Study virtually mirrors the accuracy of Omron's representations (+/-3mmHg; +/-3.7mmHg). Given the variability of all blood pressure monitors, including those in clinical settings, the disclosed slight variation in the Product here is truthful and, thus, accurate and reliable. Indeed, the paucity of "irritated customers" (relative to satisfied customers) directs only one conclusion: the Product works as intended and advertised and the inaccurate readings about which a few customers complain are likely the result of user error. User error is also a point discussed in the studies on which Plaintiffs rely in bringing their claims. Plaintiffs claim that "[h]ad Plaintiff Pond known…of the Product's limitations, she would not have purchased it or would have paid significantly less for it." Resp. Br. at 18; Cmplt. at ¶70. Yet, no reasonable consumer would have reached this conclusion. No reasonable consumer would have refused to purchase the Product had he/she known the variability in blood pressure readings might be seven tenths higher than that disclosed by the seller. There no material difference between +/-3mmHg and +/-3.7mmHg.

Plaintiffs authority offers no support. In *Brown v. Transworld Sys., Inc.*, 646 F.Supp.3d 1328 (W.D. Wash. 2022), the court concluded that the allegations were sufficient that defendants deceitfully tried to collect debts for which they knew they could not prove ownership. On these alleged facts, the court concluded the amended complaint alleged conduct that had the capacity to deceive a substantial portion of the public. *Id*. at 1342 (*citing, Hoffman v. Transworld Sys., Inc.*, 806 F.App'x 549, 551 (9th Cir. 2020) (finding it was plausible the affidavits defendants filed in the collection actions were false). Unlike *Brown*, Plaintiffs allege Omron's truthful statements – the

Product's accuracy and reliability, the fact that it is the # 1 recommended home blood pressure monitor (Exhibit 1) and its disclosure in its User Manual of the slight variation, a variation present with the taking of every blood pressure in the hospital, at the doctor's office, by any EMT, or at home. There are no allegations pleaded or capable of proof like that in *Brown*.

The same is true of *Hunt v. Medtronic USA, Inc.*, 627 F.Supp.3d 1188 (W.D. Wash. 2022). There, *Hunt* involved direct marketing to the plaintiff and other potential customers that included misstatements about the actual product used. The plaintiff actually received a different model of a device than that which he was promised. The false or deceptive business practice is clear.

Here, Omron advertised its Product in truthful terms as supported by Plaintiffs' allegations regarding Amazon.com reviews (more than 20,000 positive reviews; near 5-star rating) and the Northwestern Study and Harvard article declaring variability in blood pressure readings to be inevitable and that the Product was appropriate for home use. Discussion, *supra*. Plaintiffs fail to allege a fraud claim under Washington law. Count VII should be dismissed.

**2. The Florida Fraud Claims.**

Under FDUPTA, a deceptive practice is "likely to mislead consumers acting reasonably in the circumstances, to the consumers' detriment." *Angelo v. Parker*, 275 So. 3d 752, 755 (D. Fla. 2019) (quoting *State v. Beach Blvd. Auto., Inc.*, 139 So. 3d 380, 387 (Fla. 1st DCA 2014)). The plaintiff must show "a reasonably objective person in the same circumstances would have been deceived." *Angelo v. Parker*, 275 So. 3d 752, 755 (D. Fla. 2019); *Lombardo v. Johnson & Johnson Consumer Cos., Inc.*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015). Moreover, a deceptive practice must be shown to have caused "substantial injury" to the plaintiff and this injury could not have been reasonably avoided. *Angelo, supra.*; Op. Mem. at 17.

Puffery cannot serve as the basis for a FDUTPA claim. *Harris v. Nordyne, LLC*, 2014 WL 12516076, at *6, n.3 (S.D. Fla. 2014). Courts define puffery as including "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely." *USA Nutraceuticals Group, Inc. v. BPI Sports, LLC*, 2016 WL 4250668, at *2 (S.D. Fla. 2016); *Cutsforth v. Renschler*, 235 F. Supp. 2d 1216, 1239 (M.D. Fla. 2002).

Here, there is no evidence Omron knew or should have known of any defects outside of its already-disclosed limitations to satisfy the willfulness requirement. Plaintiffs point to negative Amazon reviews as evidence of widespread defects, ignoring that 1-star reviews make up approximately 6% of all reviews, while 76% of all Amazon reviews are 5-stars. Omron had no reason to believe that the 6% were not somehow misusing the Product.

Omron's User Manual contains a comprehensive guide for users to take their blood pressure. It also contains an extensive list of factors that may alter or interfere with the accuracy of the blood pressure readings, any one of which may account for some or all of the user issues with the Product and raised in the complaint.

Moreover, Plaintiffs cannot show deceptive trade practices through the Products' unsuitability for use by pregnant individuals or individuals with larger arm circumferences. Omron's User Manual specifically states that pregnant individuals are not advised to use the Product except on advice or recommendation by their doctor. Plaintiffs also point to the +/-3 mmHg accuracy range listed in the User Manual as evidence of willful deception because many of the class users experienced larger deviations. But larger deviations could easily be explained by conditions that are not conducive to taking accurate readings or misuse. Omron never represented that there would be *no* deviation and that the Product was precise every time blood pressure readings were taken. No blood pressure monitor is. Discussion, *supra*.

Finally, Plaintiffs' willful deception theory is undermined by Omron providing the User Manual in advance of a consumer's purchase and all the disclosures contained therein. Omron's User Manual provides a range of accuracy that users could reasonably expect and makes a number of disclaimers about conditions and situations that would contribute to inaccuracies in blood pressure readings. This User Manual is and was available for download from the Amazon.com sales page prior to a consumer's purchase. Discussion, *supra*. The FDUTPA claim should be dismissed.

**D. Plaintiffs' Express Warranty Claim Fails as a Matter of Law.**

Plaintiffs' express warranty claim turns on Omron's purported pre-sale representations of the Product being "Accurate. Reliable. Easy to Use." Resp. Br. at 22. But where, as here, representations are made about accuracy in advertisements, no express warranty claim exists. *See Watkins v. MGA Entertainment, Inc.*, 574 F.Supp.3d 747, 756 (N.D.Cal. 2021) (phrase "Age 3+" did not constitute an express warranty that a toy was safe for anyone three years old and up and was "[a]t best, it is the sort of general statement about product safety that has been found insufficient to give rise to an actionable express warranty); *see also Smith v. LG Elecs. U.S.A., Inc.,* No. C 13-4361 PJH, 2014 WL 989742, at *5 (N.D. Cal. Mar. 11, 2014) ("vague statements regarding reliability, dependability, and safety are not actionable express warranties").

Moreover, advertisements only may rise to the level of an express warranty where they are "specific and unequivocal." *Maneely v. Gen. Motors Corp.*, 108 F.3d 1176, 1181 (9th Cir. 1997); *Caldwell v. Nordic Naturals, Inc.*, 2024 WL 24325, at *8 (N.D.Cal., 2024) (citations omitted). Here, Omron specifically represents on its website that multiple readings may be needed for a "more accurate" result. Omron did not represent that the readings from the Product were accurate or reliable even if the user failed to operate the Product correctly or otherwise misused the Product.

What Plaintiff represents as the basis for Omron's express warranty misstates what Omron actually represented in its advertising. The express warranty claim should be dismissed.

**E. Plaintiffs' Breach of Implied Warranty Claims Fail as a Matter of Law.**

**1. Both Pre-Sale Representations and the User Manual Defeat the Claim.**

Omron's User Manual is not a post-sale item. Rather, it is available as a hyperlink for all purchasers at the point of sale. Discussion, *supra*. As indicated above, Omron represents that its product may require multiple readings to achieve the "most accurate" result. The Product is accurate and reliable, provided it is used correctly. Sale representations and warranty identify a range for the potential readings and provides a remedy should the product not operate accordingly.

Plaintiffs' cases are inapposite. In *Brothers*, HP provided point of sale brochures touting specific, high quality graphics cards and then later provided inferior replacement graphics cards that render the computers inoperable, per its warranty. *Brothers v. Hewlett-Packard Co.*, 2007 WL 485979, at *7 (N.D.Cal.,2007). The representations in *Fundin* about the specific drilling capabilities were immediately contradicted in the disclaimers of the written warranty. *Fundin v. Chicago Pneumatic Tool Co.*, 152 Cal.App.3d 951, 957 (1984). Plaintiffs also cite *Felice v. Invicta Watch Company of America, Inc.*, 2017 WL 3336715, at *5 (S.D.Fla. 2017) but reliance is misplaced insofar as the court did not even consider the warranty contents or as part of the pleadings. Omron did not disavow or provide contradictory disclaimers. Instead, Omron made clear the small range of variability in blood pressure readings in its warranty and provided a clear protocol for dealing with any products that did not work. There was no post-sale contradiction.

**2. The User Manual Disclaimer was Conspicuous and Enforceable.**

Next, Plaintiffs cite a single case to dispute Omron's warranty and its User Manual. The case is easily distinguished. In *Hirsch v. BHS Home Appliances Corp.*, *5-6 2022 WL 4596692

(C.D. Cal. July 21, 2022), the warranty was put in the middle of the 75 page manual and was not bolded. Here, Omron's warranty is contained in its own designated chapter with language that is both bolded and capitalized. Moreover, the implied warranty of merchantability is referenced in the very first sentence of the disclaimer – that is to say, it is both prominent and intentional. Giving the warranty its own chapter, bookending it at the end of the User Manual, and capitalizing and bolding the significant words contained in the warranty demonstrate a conspicuous presentation.

**3. Plaintiffs Failed to Plead Product Defect.**

Plaintiffs claim that the "negative reviews are so significant that they call into question the veracity of the positive reviews." Resp. Br. at 26. The negative reviews in this case account for .004% of all reviews on Amazon. Overwhelmingly positive reviews, coupled with the backing of medical professionals and the Northwestern Study, demonstrate a quality product and highlight how Plaintiffs have not adequately shown the product is defective.

Additionally, Plaintiffs cannot "simply recite the elements of a cause of action," but must plead "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). Here, Plaintiffs fail to specifically detail the defect in the product. Pleadings which are "devoid of the factual content necessary to nudge" their contents from "possible to plausible," are appropriately dismissed. *Lowe v. Edgewell Personal Care Company*, 2024 WL 150758, at *5 (N.D.Cal. 2024). In *Lowe*, Plaintiffs presented a study to support their claims that PFAS was present in the product (which was still insufficient to state a claim). Plaintiffs in this case only present negative Amazon reviews. Should courts consider negative Amazon reviews a sufficient basis to show a product defect, every product on Amazon would be subject to a class action lawsuit. Plaintiffs fail to sufficiently plead a product defect.

### 4. Pleading "Exception" to the Privity Requirement Will Not Save Their Implied Warranty Claim.

Plaintiffs concede they are not in privity with Omron. Resp. Br. at 24-25. Moreover, while California courts have struggled with the privity exception for implied warranty claims, recent California cases have consistently rejected the third party beneficiary privity exception. For example, in *Moran v. Edgewell Personal Care, LLC*, No. 21-cv-07696 RS, 2022 WL 3046906, at *2 (N.D. Cal. Aug. 2, 2022), the court analyzed implied warranty claims and relied on both Ninth Circuit and California Supreme Court precedent to reject exceptions to the privity requirement: "the holding from the California Supreme Court in *Burr v. Sherwin Williams* that the privity exception only applies to express warranties has never been overruled." *Id.* Any exception to privity applies "only to express warranties," not implied.. *Id*. (citing *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008)).

Plaintiffs cite a single case from Florida recognizing a third party beneficiary exception to privity. *Weis v. General Motors LLC*, 418 F. Supp. 3d 1173 (S.D. Fla. 2019). Resp. Br. at 25. In *Weis*, the Court acknowledged conflicting case law in federal courts in the Southern District of Florida but failed to rely on Florida state court decisions, including from the Florida Supreme Court. *See, e.g.*, *Mesa v. BMW of N. Am.*, 904 So. 2d 450, 458 (Fla. Dist. Ct. App. 2005) ("plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity") (citing *Kramer v. Piper Aircraft Corp.*, 520 So. 2d 37 (Fla. 1988)). The foregoing cases remain good law and should be applied here. There is no third party beneficiary privity exception to implied warranty claims in Florida.

Finally, the differences among state warranty laws preclude multi-class adjudication of the warranty claims. *See* Op. Mem. at 7; *supra* at Argument A. For this additional reason, the multi-class implied warranty claims should be dismissed.

**F. Plaintiffs Fail to Plead a Song-Beverly Implied Warranty Claim.**

Plaintiffs rely on *Mocek* and *Mexia* for the proposition they have no duty to present their allegedly defective products for repair. Yet, the *Mexia* court concluded otherwise:

> The duration provision in the Song–Beverly Act provides that the "duration of the implied warranty of merchantability ... shall be *coextensive* in duration with an express warranty which accompanies the consumer goods, provided the duration of the express warranty is reasonable; but in no event shall such implied warranty have a duration of less than 60 days nor more than one year following the sale of new consumer goods to a retail buyer.

*Mexia v. Rinker Boat Co., Inc.*, 95 Cal.Rptr.3d 285, 290, 174 Cal.App.4th 1297, 1304 (Cal.App. 4 Dist., 2009) (emphasis added) (citing Civ.Code § 1791.1, subd. (c)).

Under Song-Beverly, this Court should look to the terms of Omron's express warranty to determine the length of the warranty period. Here, the product has different warranty periods for different potential defects. It is likely that Omron offered more robust protections (warranty lengths) in its express warranty than provided under the implied warranty provisions of Song-Beverly.

When the alleged defects manifested is also important. Plaintiffs attempt to avoid this pleading requirement with a catchall "latent" defect allegation. The pleading is also silent as to whether the Products used by Peery or Schneider worked for any particular time and when they supposedly stopped working. The timing of when the products worked and when they stopped doing so is critical but conspicuously absent. *See Marchante v. Sony Corp. of America, Inc.*, 801 F.Supp.2d 1013, 1021–22 (S.D.Cal. 2011) (detailing the importance of specific dates of defects in products and the inappropriateness of generally claiming a catchall latent defect). For all these reasons, Plaintiffs' Song-Beverly claim should be dismissed.

## Conclusion

For the foregoing reasons and those in its opening memorandum, Defendant Omron Healthcare, Inc., respectfully requests this Court dismiss Plaintiffs' Complaint in its entirety, and with prejudice. Omron further requests this Court dismiss and/or strike the class claims with prejudice, strike Plaintiffs' request to certify classes and for such other and further relief the Court deems just and appropriate.

Respectfully Submitted,

**OMRON HEALTHCARE, INC.**

Dated: April 9, 2024 By: */s/Patrick G. Cooke*
One of its Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on **April 9, 2024**, I electronically filed **Omron Healthcare, Inc.'s Reply in Further Support of Its Motion to Dismiss Class Action Complaint and Strike Allegations Relating to Class Certification** with the United States District Court using the CM/ECF filing system, which will automatically send copies to all counsel of record.

Under penalties as provided by law, the undersigned certifies that the statements set forth in this Certificate of Service are true and correct.

*/s/ Patrick G. Cooke*